IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| David Champness, | : | |
| | : | Case No. 1:14-cv-730 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Granting In Part and Denying In |
| J.D. Byrider Systems, LLC, | : | Part Defendant's Motion to Dismiss or |
| | : | Stay Proceedings and Compel Arbitration |
| Defendant. | : | |
| | : | |

This matter comes before the Court on Defendant's Motion to Dismiss or to Stay

Proceedings and Compel Arbitration (Doc. 5).  Plaintiff contests the Motion.  For the reasons

that follow, the Motion will be **GRANTED IN PART**, and this action will **STAYED** pending

arbitration.

## I.     BACKGROUND

The instant action arises from Plaintiff's employment with and subsequent termination

from Defendant, J.D. Byrider Systems, LLC ("Byrider").[1]  Plaintiff David Champness was hired

as an account representative in February 2012, and worked out of Byrider's Anderson, Ohio

branch throughout his tenure until his termination from employment on October 10, 2013.

(Compl., Doc. 1 at PageID 2–3, ¶¶ 15, 27.)

Plaintiff filed the instant lawsuit on September 13, 2014.  Plaintiff claims that during his

employment with Byrider, he was subjected to disparaging comments regarding his age made by

his supervisor.  (*Id*. at PageID 3, ¶ 17.)  In May 2013, Plaintiff was hospitalized for stroke-like

systems, and upon his returning to work was told he was "too old" to perform his job.  (*Id*. at

PageID 3, ¶ 23–24.)  Plaintiff worked without restrictions following his return to work, but his

---

[1] Defendant asserts that the proper Defendant in this case is J.D. Byrider Sales of Indiana S, Inc., now
called J.D. Byrider Sales of Indiana S, LLC.

supervisor questioned whether Plaintiff could put in the time and effort required by Byrider.  (*Id.* at PageID 3, ¶ 25.)  Although he exceeded his sales goals for the first eight months of 2013, on October 10, 2013, Plaintiff was terminated.  (*Id.* at PageID 3, ¶¶ 26–27.)  Plaintiff now asserts claims of age discrimination under state and federal law, FMLA retaliation, disparate treatment, and breach of contract.  He seeks reinstatement and to recover lost pay and benefits, front and back pay, compensatory damages, punitive damages, reasonable attorney's fees and costs, prejudgment interest, and all other legal and equitable relief to which he may be entitled.

  Shortly after Plaintiff filed his complaint, Defendant filed a Motion to Dismiss or to Stay the Proceedings and Compel Arbitration (Doc. 5) on the basis that Plaintiff is bound to multiple agreements to arbitrate his claims.  In support of its position, Defendant attached the following documents it contends contain an agreement by Plaintiff to arbitrate the claims at issue in this litigation:  (1) the J.D. Byrider CNAC Application for Employment ("Employment Application"), (2) the J.D. Byrider Receipt & Acknowledgment of Having Read the J.D. Byrider Employee Manual ("Acknowledgment Form"), and (3) the Employee Dispute Resolution Plan ("Dispute Resolution Plan").

  Plaintiff completed his Employment Application prior to hire on January 17, 2012, which contains the following language regarding arbitration:

> I agree that I will settle any and all claims, disputes, or controversies arising out of or relating to my application or candidacy for employment, term of employment, and cessation of employment with the Company, exclusively by final and binding arbitration before a neutral arbitrator.  By way of example only, such claims include claims under federal, state, and local statutory or common law, such as sexual harassment, the Age Discrimination and Employment Act, Title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991, The Americans with Disabilities Act, the law of contract and the law of tort.  Complete details of my agreement to submit these claims to arbitration are contained in the Company's Employee Dispute Resolution Plan, which is available for my review upon my request.

(Doc. 5-3 at PageID 41.)

On February 20, 2012, Plaintiff also signed the Acknowledgment Form verifying he read the Byrider Employee Manual.  The Acknowledgment Form includes a statement that Plaintiff "understand[s] and agree[s] that disputes [he] has with the Company will be settled by binding arbitration according to the Employee Dispute Resolution Plan."  (Doc. 5-4 at PageID 43.)  The same day, Plaintiff also signed the Dispute Resolution Plan, which states it "is intended to create an exclusive mechanism for the final resolution of all disputes falling within its terms."  (Doc. 5-5 at PageID 45.)  The Dispute Resolution Plan also states:

> This Plan applies to and binds the Company, each Employee who is in the employment of the Company on or after the effective date of this Plan, and applicant for employment who applied on or after the effective date of this Plan, and the heirs, beneficiaries, successors, and assigns of any such persons.  All such persons shall be deemed parties to this Plan.
>
> Except as provided for herein, this Plan applies to any past, present, or future legal or equitable claim, demand, or controversy, whether or not arising out of the employment relationship, between persons bound by the Plan.  The claims covered by this Plan include, but are not limited to, claims relating to the employment of Employee; claims relating to this Plan; claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims, claims for discrimination (including but not limited to, race, sex, sexual orientation, religion, national origin, age, marital status, sexual or other harassment, disability or handicap, or relation); claims for benefits or other incidents of employment with the Company, provided, however, that this Plan does apply to claims relating to ERISA-covered plans; and claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, except claims excluded elsewhere by this Plan.

(*Id.* at PageID 46.)

Defendant asserts that all three of the afore-mentioned documents constitute valid agreements to arbitrate.  In response, Plaintiff argues the language of the Dispute

Resolution Plan is not enforceable, a position he supports with his own Affidavit.  (Pl.

Aff., Doc. 9-3 at PageID 96-101.)[2]

## II.  LEGAL STANDARD

Plaintiff's Motion to Dismiss or to Stay the Proceedings and Compel Arbitration, made

pursuant to Rule 12(b)(1) and the Federal Arbitration Act, 9 U.S.C. § 1, et seq. (the "FAA"), is

properly analyzed as a motion to compel under the FAA.  *Stepp v. NCR Corp.*, 494 F. Supp. 2d

826, 828–29 (S.D. Ohio 2007) (motion to compel arbitration is brought under 9 U.S.C. § 1, *et

seq.*, not Fed. R. Civ. P. 12(b)(1)).  The FAA provides  that "a party to an arbitration agreement

that is aggrieved by another party's refusal to submit an arbitral dispute to arbitration may

petition any federal court which would otherwise have jurisdiction over the underlying matter to

compel arbitration."  *Raasch v. NCR Corp.*, 254 F.Supp.2d 847, 851 (S.D. Ohio 2003); 9 U.S.C.

§ 4.  Thus, the Court will first consider whether the parties' agreement to arbitrate is enforceable

pursuant to the FAA.

Section 2 of the FAA states that an agreement to arbitrate "shall be valid, irrevocable, and

enforceable, save upon such grounds as exist at law in in equity for the revocation of any

contract."  9 U.S.C. § 2.   In examining a contract, the Court:

> first, must determine whether the parties agreed to arbitrate; second, it must
> determine the scope of that agreement; third, if federal statutory claims are
> asserted, it must consider whether Congress intended those claims to be
> nonarbitrable; and fourth, if the court concludes that some, but not all, of the
> claims in the action are subject to arbitration, it must determine whether to stay
> the remainder of the proceedings pending arbitration.

---

[2] Plaintiff has requested oral argument on the instant Motion.  The Court granted Plaintiff's request to file a
surreply, and the issues have been fully briefed by both sides.  Because oral argument would not assist the resolution
of the Defendant's Motion, Plaintiff's request for an oral argument is denied.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).  "The FAA then contemplates a stay of the proceedings in federal court, as compared to dismissal of the action, 'until such arbitration has been had in accordance with the terms of the agreement.'"  *Raasch,* 254 F. Supp. 2d at 851 (citing 9 U.S.C. § 3).  Once it has been established that arbitration must be compelled, federal courts have held that dismissal of the action is appropriate where the language of the agreement dictates the arbitrator's decision is final and binding.  *Id*.

"In evaluating motions or petitions to compel arbitration, courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party."  *Id*.   At the same time, the FAA manifests "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary" and "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24–25 (1983)).

The validity of an arbitration agreement is determined in accordance with state law. *Floss v. Ryan's Family Steak Houses, Inc.,* 211 F.3d 306, 314–15 (6th Cir. 2000).  Ohio has the most significant relationship to the contract and the parties when an arbitration agreement that is the subject of a dispute between an employee and his employer is allegedly formed in Ohio and the employee's employment and termination occur in Ohio.  *See Morrison v. Circuit City Stores, Inc*., 70 F. Supp. 2d 815, 821 (S.D. Ohio 1999).  As both are the case here, the Court will interpret the contracts at issue in accordance with Ohio law.

III.    **ANALYSIS**

A.    **Agreement to Arbitrate Plaintiff's Claims**

The Court finds that the parties entered into two valid agreements to arbitrate Plaintiff's claims: the Employment Application and the Dispute Resolution Plan.[3]  There is no dispute Plaintiff signed the Dispute Resolution Plan on February 20, 2012 and the Employment Application on January 17, 2012.  (Dispute Resolution Plan, Doc. 5-5 at PageID 46; Pl. Aff., Doc. 9-3 at PageID 98; Employment Application, Doc. 5-3 at PageID 42.)

There is also no dispute the claims at issue in this litigation are covered by the broadly-worded arbitration clauses in each agreement.  The Dispute Resolution Plan applies to "any past, present, or future legal or equitable claim, demand or controversy, whether or not arising out of the employment relationship," including "claims relating to the employment of Employee," "claims for breach of contract," and "claim[s] for discrimination."  (Doc. 5-5 at PageID 46.)  The Employment Application includes an agreement to "settle any and all claims, disputes, or controversies arising out of or relating to my application or candidacy for employment, term of employment, and cessation of employment with the Company" by arbitration, including claims arising under "federal, state, and local statutory law," the Age Discrimination and Employment Act, and "the law of contract."  (Employment Application, Doc. 5-3 at PageID 41.)  All of

---

[3] The Court rejects the argument that the Acknowledgment Form is a contract.  The Acknowledgment Form expressly states the "Manual is not a contract of employment or contract of any kind."  *See Stanich v. Hissong Group, Inc.*, No. 2:09-cv-0143, 2010 WL 3732129, at *4–6 (S.D. Ohio Sept. 20, 2010) (handbook did not create an agreement to arbitrate where the purported arbitration agreement expressly stated it was not a contract).  Moreover, the Acknowledgment Form lacks mutuality of obligation, as only Plaintiff signed the document and as the alleged agreement to arbitrate only applies to him, and not to Defendant.  *See id.,* 2010 WL 3732129 at *5 (mutuality of obligation requires both parties to be bound by the terms of a contract).

Plaintiff's claims asserted in this litigation relate to his employment and are covered by the express language of the two arbitration agreements.[4]

Plaintiff brings claims of age discrimination under state and federal law, FMLA retaliation, disparate treatment, and breach of contract and does not argue that his claims do not fall within the language of the parties' agreement.  Agreements to arbitrate employment disputes are generally enforceable under the FAA, including employment discrimination and breach of contract claims.  *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 109 (2001); *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 35 (1991) (ADEA claim was subject to compulsory arbitration pursuant to arbitration agreement); *Morgan v. United Healthcare Services, Inc.,* No. 1:12-cv-676-HJW, 2013 WL 1828940, at *4 (S.D. Ohio April 30, 2013) (FMLA claim was subject to arbitration); *Raasch*, 254 F. Supp. 2d at 868 (ADEA and age discrimination claim under Ohio law were governed by binding arbitration agreement); *Leach v. Kenetic Concepts, Inc.,* No. 1:06-cv-00525, 2006 WL 3337471, at *2 (S.D. Ohio Nov. 16, 2006) (claims for breach of contract were subject to arbitration pursuant to the parties' agreement).  Thus, the Court finds the agreements to arbitrate in this case unambiguously encompass the dispute between the parties.

**B.     Enforceability of the Dispute Resolution Plan**

Although Plaintiff does not dispute agreeing to arbitrate, he argues that the terms of the Dispute Resolution Plan relating to fees and expenses, discovery rules and venue selection are unenforceable.  Defendants argue that Plaintiff cannot establish these provisions are

---

[4] The Employment Application has been found to be a valid and enforceable agreement to arbitrate.  *See McLean v. Byrider Sales of Indiana S, LLC,* No. 2:13-cv-00524-GLF-MRA, 2013 WL 4777199 (S.D. Ohio Sept. 5, 2013).

unenforceable but regardless, any unenforceable provisions are severable from the Dispute

Resolution Plan.

**1.      Prohibitive Cost-Shifting, Pay-to-Play, and Loser-Pays Provisions**

The Court will first consider Plaintiff's central argument that the fees and costs

provisions of the Dispute Resolution Plan render the entire agreement unenforceable and act as a

deterrent to him and other similarly situated litigants.  Three provisions are at issue: a cost-

shifting provision tying Plaintiff's upward exposure for arbitration fees and costs to the greater of

$10,000 or ten percent the amount in controversy, a pay-to-play provision requiring Plaintiff to

tender an unknown security deposit prior to arbitration, and a loser-pays provision.  Specifically,

Section 14, Fees and Expenses, states:

> A. The parties shall equally share the cost of any filing fee and the fees and costs
>    of the Arbitrator; provided, however, that the Employee's maximum
>    contribution shall be the greater of: (i) $10,000.00 or (ii) 10% of the amount in
>    controversy.  The Arbitrator has the authority upon motion to further reduce
>    the Employee's share of the costs and fees upon a showing of substantial
>    need,
> B. Each party shall deposit funds or post other appropriate security for its share
>    of the Arbitrator's fee, in an amount to be determined by the Arbitrator, ten
>    days before the first day of the hearing,
> C. Each party shall bear its own costs and attorney's fees; provided, however,
>    that the Arbitrator may award attorney's fees and costs to the prevailing party
>    in accordance with the terms of this Plan.

(Doc. 5-5 at PageID 50, ¶14.)  In addition, Section 13 of the Dispute Resolution Plan provides

that the Arbitrator may award attorney's fees and costs to the prevailing party:

> [u]pon a finding that a party has sustained its burden of proof on any dispute or
> counterclaim, the Arbitrator may award such monetary or injunctive relief as may
> be just and reasonable under applicable law.  In awarding relief, however, the
> Arbitrator shall abide by this Plan and shall further adhere to the following
> guidelines:
>  . . .
> B. The Arbitrator may award any party its reasonable attorney's fees and costs,
>    including reasonable expenses associated with production of witnesses or

8

> proof incurred in defending against a dispute or counterclaim that is frivolous
> or brought for the purpose of harassment.

(*Id*. at PageID 50, ¶13.)

The Court will first consider the issue of the cost-shifting and pay-to-play provisions of the Dispute Resolution Plan.  Although Defendant argues that the issue of arbitration fees and costs is properly raised after arbitration, the issue is not premature.  The Sixth Circuit has held that "potential litigants must be given an opportunity, prior to arbitration on the merits, to demonstrate that the potential costs of arbitration are great enough to deter them and similarly situated individuals from seeking to vindicate their federal statutory rights in the arbitral forum." *Morrison v. Circuit City Stores, Inc*., 317 F.3d 646, 663 (6th Cir. 2003) (en banc).  Thus, if the splitting of costs of the arbitral forum under the terms of an arbitration agreement prevents the vindication of a plaintiff's statutory rights, those rights cannot be subject to mandatory arbitration under that agreement.  *Id*. at 658.

In determining whether the cost-shifting provision of an arbitration agreement is enforceable, the Court must inquire into whether "the potential costs of arbitration are great enough to deter [potential litigants] and similarly situated individuals from seeking to vindicate their federal statutory rights in the arbitral forum."  *Id*. at 663.  "Reviewing courts must 'define the class of … similarly situated potential litigants by job description and socioeconomic background,' and 'look to average or typical arbitration costs' weighted against 'the potential costs of litigation.'"  *Mazera v. Varsity Ford Management Services, LLC,* 565 F.3d 997, 1003 (6th Cir. 2009) (citing *Morrison*, 317 F.3d at 663–64.)  "In short, where 'the overall cost of arbitration, from the perspective of the potential litigant, is greater than the cost of litigation in court,' and the 'additional expense … would deter potential litigants from bringing their statutory

9

claims in the arbitral forum,' the cost-shifting provision is unenforceable." *Id.* at 1003 (citing *Morrison*, 317 F.3d at 664.)

Plaintiff asserts in his Affidavit that he earned $29,000 in 2012 and $49,811.43 while working for Byrider in 2012 and 2013 respectively. (Doc. 9-3 at PageID 97.) Following his termination from employment, Plaintiff received unemployment benefits for approximately seven months, which, after taxes and child support, amounted to less than $350 in benefits every two weeks. (*Id.*) On May 12, 2014, Plaintiff began a new job, for which his current salary is $36,000 annually and his sole means of support. (*Id.*) Thus, Plaintiff represents a class of account representatives who earn between $25,000 and $50,000 per year, who shoulder family expenses, such as child support, and who may face a significant amount of unemployment following termination from employment. As the *Morrison* Court noted: "[r]ecently terminated, a potential litigant must continue to pay for housing, utilities, transportation, food and the other necessities of life in contemporary society despite losing [his] primary, and most likely only, source of income." *Morrison*, 317 F.3d at 669.

The Court must also consider the costs of arbitration in this case weighed against the potential costs of litigation. In this case, there is no question that the costs of arbitration will exceed the costs of litigation. Plaintiff estimates that the costs and fees of arbitration include pre-arbitration conferences, resolution of discovery disputes, motion practice, renting a venue, travel, arbitration, and costs associated with the arbitrator drafting a decision. (Doc. 9-3 at PageID 100.) Based upon Plaintiff's research, arbitrators on the AAA panel often charge $300 to $500 per hour on pre-trial issues, and $1,250 to $1,5000 daily for arbitration. (*Id.*) Applying those rates, Plaintiff estimates that an arbitrator's fees in this matter could fall between $5,500 to

$7,000 for ten hours of work on pre-trial matters, and two days of arbitration and decision writing.  (*Id*.)

Pursuant to the terms of the Dispute Resolution Plan, Plaintiff faces paying the greater of $10,000 or ten percent the amount of controversy for his share of arbitration fees and costs. Unlike litigation, he must also pay-to-play and post an undetermined amount in security ten days prior to arbitration.  In short, there is no way for Plaintiff to determine his maximum upwards exposure to realistically assess his arbitration cost.  But for the sake of completeness, based upon his current demand of $250,000, Plaintiff's current maximum exposure is $25,000. Plaintiff's upwards exposure hinges upon his demand and estimated damages, so this upwards exposure is subject to change.  In contrast, based upon Plaintiff's current and modest estimation of arbitration expenses, Plaintiff's share for the cost of arbitration could be at least $2,750, which is approximately thirteen percent of his Plaintiff's current income.  This amount is particularly burdensome considering Plaintiff's unemployment following his termination from employment. Moreover, Plaintiff has no way to estimate the expense of a security deposit required to be posted in advance of arbitration.  In contrast, Plaintiff's litigation costs, aside from the work of his counsel, include a $400 filing fee and exclude the cost of a security deposit or decision-maker's time.  It is clear that the costs of arbitration are a significant and intentional deterrent to filing a claim.

Plaintiff filed this litigation because he argues the costs of arbitration exceed his limited financial resources and act as a deterrent for pursing his claims.  The Court agrees.  Both the cost-shifting and pay-to-play provisions are clear efforts to deter Plaintiff and other similarly situated litigants from seeking redress and enforcing their statutory rights.  Most egregious is the fact that Plaintiff's share of arbitration costs is tied directly to his own demand.  This is

particularly nefarious considering the greater a potential litigant may have been harmed, the greater his arbitration cost exposure will be.  Thus, the Court is satisfied Plaintiff has met his burden in demonstrating that the heavy-handed cost-shifting and pay-to-play arrangement in the arbitration agreement would deter a substantial number of similarly situated persons from attempting to vindicate their statutory rights in an arbitral forum, thus rendering the provisions unenforceable.

The Defendant argues that Plaintiff cannot show that the arbitration would be prohibitively expensive because he bears the burden of showing the likelihood of incurring the costs of arbitration.  Under Section 14(A) of the Dispute Resolution Plan, "[t]he Arbitrator has the authority upon motion to further reduce the Employee's share of the costs and fees upon a showing of substantial need."  (Doc. 5-5 at PageID 50.)  In *Mazera*, the plaintiff, who had signed an agreement to arbitrate, was able to request his employer waive the $500 arbitration filing fee by submitting a request to his general manager, and there was evidence that the defendant employer would likely grant the plaintiff's request.  565 F.3d at 1000, 1004–05.  Thus, the Court found that the plaintiff had not met his burden of demonstrating he was likely to incur substantial, prohibitive fees in pursuing arbitration.  *Id.*

By contrast, the language of the fees and expenses provision of the Dispute Resolution Plan is significantly more burdensome.  The potential fees at issue are far greater than the $500 filing fee at issue in *Mazera*, as Plaintiff must bear the greater of up to $10,000 or ten percent of the amount in controversy and pay a security deposit to be determined by the arbitrator ten days prior to the hearing.  While the arbitrator may reduce Plaintiff's share of fees, there is no evidence to suggest that Plaintiff would meet the "substantial need" standard or that the arbitrator is authorized to waive all fees in their entirety.  There is also no method by which the Plaintiff

may request a waiver of the pay-to-play security deposit.  Moreover, Defendant's statement that it "may not object" to a request for a reduction in fees is not evidence that a request would be granted.  Thus, this case is not analogous to *Mazera*, and Plaintiff has met his burden that he is likely to incur significant, prohibitive costs if he filed for arbitration pursuant to the parties' agreement.

The Court now turns to the loser-pays provisions of Sections 13(B) and 14 of the Dispute Resolution Plan.  These provisions are unenforceable as they provide recovery to a successful defendant-employer that was not intended under the FMLA.  *Deher v. Eskco, Inc.*, Nos. 3:08-cv-325, 3:09-cv-209, 2009 WL 2176060, at *8 (S.D. Ohio July 21, 2009) (adopting magistrate's report and recommendation that loser-pays provision in the arbitration clause was unenforceable because it provided recovery to the defendant-employer not extended to FMLA defendants under the statute).

As such, the cost-shifting, pay-to-play, and loser-pays provisions of Section 13(B) and 14 are unenforceable.

**2.      Restrictive Discovery Limitation**

Plaintiff also contends that the limit on the number of interrogatories is unenforceable. Section 10(B)(2) of the Dispute Resolution Plan states as follows:  "The Arbitrator shall have discretion to determine the form, amount, and frequency of discovery, subject to the following guidelines: . . . Each party may propound one set of no more than ten interrogatories, including subparts.  Additional interrogatories may be propounded only upon a show of good cause." (Doc. 5-5 at PageID 48.)  Plaintiff does not cite any authority in support of his argument, while Defendant argues that Plaintiff has not made any showing he would need to propound greater than ten interrogatories or that the arbitrator would refuse a request to do so.  Defendant also

13

argues that the Dispute Resolution Plan calls for discovery to be conducted "in accordance with the Federal Rules of Civil Procedure, subject to any restrictions imposed by the Arbitrator of the Plan."  (*Id*. at PageID 48.)

The Sixth Circuit has held that limitations on discovery in the arbitral forum do not prejudice an employee's ability to prove his statutory claims.  *Howell v. Rivergate Toyota, Inc*., 144 Fed. App'x 475, 480–81 (6th Cir. 2005) (holding that a limitation on discovery was not likely to prejudice the employee's ability to prove his statutory claims).  In *Howell*, the Court rejected the plaintiff's argument that the parties' limited discovery procedure, which permitted additional discovery upon a showing of good cause, prevented the plaintiff's ability to prove his statutory claims.  *Id*. at 481.  Similarly, the Court is not persuaded that Plaintiff will be unable to vindicate his statutory rights with the applicable reduced discovery imposed by the Dispute Resolution Plan.  *See also Prasad v. General Elec. Co*., No. 2:13-cv-272, 2014 WL 934577, at *4 (S.D. Ohio Mar. 10, 2014) (limit on pre-trial discovery not restrictive where arbitrator had the authority to order additional discovery necessary for a full and fair exploration of the issues in dispute).  As such, the Court finds that the discovery procedures of the Plan are enforceable.

**3.  Inconvenient Forum**

Plaintiff argues that the forum selection of Indianapolis, Indiana established by Section 9 of the Dispute Resolution Plan is unenforceable.  He argues that the forum is inconvenient and will cause greater expense to him, as he is located and worked in Cincinnati, Ohio, which is more than three hours away from Indianapolis.  In responding to Plaintiff's argument, Defendant stated that it is willing to hold the arbitration in Cincinnati, Ohio.  (Doc. 13 at PageID 125) ("Byrider would be willing to hold the arbitration hearing in Cincinnati if Plaintiff would so

14

prefer.")  As the Defendant's offer addresses the Plaintiff's concerns about cost and convenience, the Court orders that the parties' arbitration be held in Cincinnati, Ohio.

**4.      Limitation on Remedies**

This Court also finds that the Dispute Resolution Plan's limitation on remedies violates established precedent of this Circuit.  Section 6(B) of the Dispute Resolution Plan prohibits recovery of punitive damages, as it states, "[y]ou may not seek punitive damages to any statutory claim relating to your employment or termination of employment."  (Doc. 5-5 at PageID 47.)  In *Morrison v. Circuit City Stores, Inc.,* 317 F.3d 646, 670 (6th Cir. 2003), cited by both parties throughout their briefing, the Court held that an arbitration agreement curtailing a Title VII plaintiff's remedies "undermine[d] both the remedial and deterrent principles of Title VII," and was unenforceable.  Specifically, the limitation on remedies "eviscerate[d] Congress's intent to utilize punitive damages as a tool for combating discrimination."  *Id*. at 672.

Section 6(B) of the Dispute Resolution Plan undermines the remedial purposes of OHIO REV. CODE Chapter 4112, which authorizes an award of punitive damages in civil employment discrimination contexts.  As *Morrison* noted, "[i]t is well-established that 'a party does not forgo the substantive rights afforded by [a] statute [when she agrees to arbitrate a statutory claim but] only submits to their resolution in an arbitral, rather than a judicial, forum.'"  *Id*. at 670 (citing *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 26 (1991)).  The critical issue is not whether a claimant may attain some of the remedies under the statute but whether the limitation on remedies at issue "undermines the rights protected by the statute." *Id.*

OHIO REV. CODE § 4112.99 authorizes an award of punitive damages in civil employment discrimination contexts, including in age discrimination cases.  *Rice v. CertainTeed Corp*., 704 N.E.2d 1217, 1218 (Ohio 1999); *see Johnson v. Con-Way Freight, Inc*., No. 4:10cv2167, 2010

WL 4735754, at *1 (N.D. Ohio 2010) (noting Oʜɪᴏ Rᴇᴠ. Cᴏᴅᴇ Chapter 4112 permits recovery of front pay, back pay, and other compensatory damages, as well as punitive damages and attorney's fees). In addressing the issue of whether Oʜɪᴏ Rᴇᴠ. Cᴏᴅᴇ § 4112.99 authorizes an award of punitive damages in civil employment discrimination contexts, the Ohio Supreme Court issued a resounding "yes," noting the statute is remedial in nature but also possesses a "deterrent component concerned with preventing socially noisome business practices." *Rice*, 704 N.E.2d at 1218, 1220–21. Plaintiff's age discrimination claim under state law is brought under Oʜɪᴏ Rᴇᴠ. Cᴏᴅᴇ §§ 4112.14 and 4112.99, and he seeks to recover punitive damages. Thus, consistent with *Morrison*, the Dispute Resolution Plan's limitation of punitive damages undermines the rights protected by the Ohio Revised Code. As such, this Court finds that Section 6(B) of the Dispute Resolution Plan is not enforceable.

## C.      Severability

The parties diverge on the issue of whether the unenforceable provisions of the parties' Dispute Resolution Plan should be severed or render the entire Plan unenforceable. Under Ohio law, whether unenforceable provisions render the entire agreement unenforceable or are properly severed is determined by the intent of the parties. *Morrison*, 317 F.3d at 674–75 (citing *Toledo Police Patrolmen's Ass'n v. City of Toledo,* 641 N.E.2d 799, 803 (Ohio App. 1994), *appeal denied,* 639 N.E.2d 795 (Ohio 1994)). Section 16 of the Dispute Resolution Plan states:

> Each provision and individual covenant of this Agreement is severable. If any court or other governmental body of competent jurisdiction shall conclude that any provision or individual covenant of this Agreement is invalid or unenforceable, such provision or individual covenant shall be deemed ineffective to the extent of such unenforceability without invalidating the remaining provisions and covenants hereunder. The court shall sever the unenforceable provision and enforce the remainder of this Agreement and the Arbitration Rules.

(Doc. 5-5 at PageID 50.) Thus, the language of the Dispute Resolution Plan clearly states that even if some provisions are found to be unenforceable, as in this case, they are properly severed, and the remainder of the agreement is to be enforced.

Severability in this context is consistent with the precedent in this Circuit. In *Morrison*, the Court found both a cost-shifting and limitation on remedies provisions to be unenforceable, and held that severance of the unenforceable provisions was permissible. 317 F.3d at 674. Later, in *Scovill v. WSYX/ABC,* 425 F.3d 1012, 1016 (6th Cir. 2005), the Court examined a district court's decision to sever unenforceable provisions of an arbitration agreement, and noted that the language of the two severability clauses at issue left "little to doubt" as to whether the parties intended the enforceable provisions to be severed. The Court also rejected the plaintiff's argument that severance was not permissible because there were multiple unenforceable provisions, finding *Morrison* instructive. *Id*. at 1016–17. The Court held, "[w]e do not think the Plaintiff has presented enough evidence to show that the agreement in this case is one where the unenforceable provisions are so overwhelming as to 'taint' the rest of the agreement." *Id*. at 1017.

The facts of this case are not distinguishable enough to allow this Court to conclude that the unenforceable provisions so taint the entire Dispute Resolution Plan so as to render it entirely unenforceable. The Court concludes it must follow Sixth Circuit precedent and sever the unenforceable provisions of the Dispute Resolution Plan and enforce the remainder of the agreement.

D.     **Unconscionability**

Plaintiff alternately argues that the entire Dispute Resolution Plan is unconscionable under Ohio law.  Under Ohio law, the unconscionability doctrine consists of both substantive unconscionability, or "unfair and unreasonable contract terms," and procedural unconscionability, or "individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible."  *Scovill*, 425 F.3d at 1017 (citing *Jeffry Mining Prods., L.P. v. Left Fork Mining Co.*, 758 N.E.2d 1173, 1181 (Ohio App. 2001)). Both procedural and substantive unconscionability must be established to find a contract unconscionable.  *Id*.

Plaintiff cannot meet the threshold for establishing procedural unconscionability, nor does he cite any case law to demonstrate the facts of his case rise to the level of procedural unconscionability under Ohio law.  In determining whether procedural unconscionability exists, "Ohio courts look to 'factors bearing on the relative bargaining position of the contracting parties, including their age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, and whether alterations in the printed terms were possible.'"  *Id*. (citing *Cross v. Carnes*, 724 N.E.2d 828, 837 (Ohio App. 1998)).

Plaintiff states that he did not have an opportunity to review the costs or fees he was expected to pay in the event he sought arbitration under the agreement, and he has no recollection of signing the Dispute Resolution Plan.  (Doc. 9-3 at PageID 98.)  These facts are not sufficient evidence of procedural unconscionability.  *See Vanyo v. Clear Channel Worldwide*, 808 N.E.2d 482, 486 (Ohio App. 2004) (there was no record evidence to allow the

court to conclude that the plaintiff was unaware of the impact of the agreement or otherwise limited in understanding its impact, particularly as the agreement itself contained an acknowledgment that she was given the opportunity to discuss the agreement with an attorney).

Here, as in *Vanyo*, the language of the Dispute Resolution Plan includes a statement that the signing party has an opportunity to consult an attorney.  (Doc. 5-5 at PageID 45.)  The Dispute Resolution Plan also includes Section 19, Special Provision For Persons Over 40, which provides for twenty-one days to consider the agreement and seven days to revoke signature.  (*Id*. at PageID 51.)  Moreover, the Dispute Resolution Plan is drafted in regular font, conspicuously labeled on the first page as "EMPLOYEE DISPUTE RESOLUTION PLAN" and lacks any hidden or fine print.  *See Taylor Bldg. Corp. of Am. v. Benfield,* 884 N.E.2d 12, 23 (Ohio 2008) (finding arbitration agreement was not procedurally unconscionable where font size was standard and not hidden, plaintiffs initialed and signed the agreement, and there was no evidence of plaintiffs being rushed through review of the contract or being prevented from consulting an attorney).  Thus, the Court concludes that based on the record, there is insufficient evidence to establish procedural unconscionability existed in this case.

Because unconscionability requires both procedural and substantive unconscionability, the Court need not consider Plaintiff's argument that the Dispute Resolution Plan is substantively unconscionable.  *See Scovill*, 425 F.3d at 1018.  Thus, there is insufficient evidence to establish the Dispute Resolution Plan was unconscionable under Ohio law.

IV.     **CONCLUSION**

For the foregoing reasons, the Court finds Plaintiff has agreed to arbitrate his claims and therefore must be compelled to do so.  As such, Defendant's Motion to Dismiss or to Stay Proceedings and Compel Arbitration (Doc. 5) is **GRANTED IN PART AND DENIED IN**

**PART.** The Court finds that Sections 6(B), 13(B), and 14 of the Dispute Resolution Plan are unenforceable and are therefore severed from the Dispute Resolution Plan. The Court **COMPELS ARBITRATION** of the instant dispute pursuant to the terms of the Dispute Resolution Plan sans the unenforceable provisions. The Court further orders that the arbitration occur in Cincinnati, Ohio. Pursuant to Section 11 of the Dispute Resolution Plan, the AAA Employment Dispute Resolution Rules shall apply to the fees and costs of this dispute.

The Court has discretion to stay or dismiss the instant matter. *See* 9 U.S.C. § 3 (mandating courts to stay proceedings pending completion of arbitration); *Hensel v. Cargill, Inc.,* No. 99-3199, 1999 WL 993775, at *4 (6th Cir. Oct. 19, 1999) (permitting courts to dismiss actions in which all claims are referred to arbitration). Under the facts of this case, the Court finds that staying Plaintiff's claim will promote judicial economy. Accordingly, this action is **STAYED** pending arbitration.

**IT IS SO ORDERED.**

S/Susan J. Dlott_____
Judge Susan J. Dlott
United States District Court

20